VAN Wvck, J.
From the findings and judgment herein, it *855 appears tbat tbe court below decided and determined tbat on Dec. 13,1877, tbe defendants, diaries H. Baxter, Franklin Bell, and William M. Baxter, partners under tbe firm name of Baxter, Bell & Co., made a general assignment of tbeir firm assets for tbe benefit of tbeir creditors to tbe defendant, Isaac N. Hebberd, wbo was tbeir clerk, at which time Chas. H. Baxter, and Franklin Bell were indebted to tbe plaintiff in tbe sum of $15,000 with interest from Oct. 1, 1877, on their bond to him, secured by tbeir mortgage on real estate of totally inadequate value to secure that sum. That after said general assignment and before the 9th of January, 1878, tbe defendants, Hebberd, Bell, C. H. and Wm. M. Baxter, induced tbe creditors of Baxter, Bell & Co. including tbe plaintiff,to sign a composition deed to compromise tbeir claims against the said firm of Baxter, Bell & Co. at 35 per cent, in cash or 40 per cent, in notes. That certain of these creditors signed such composition deed under a secret agreement that they were to receive more than tbe compromise per centage in fraud of plaintiff’s rights, and plaintiff was induced by representations made by Bell as to the amount of assets and liabilities, which were false to tbe knowledge of Bell, and tbat Hebberd was privy to such illegal preference to certain of tbe compounding creditors and tbat tbe composition deed was void for such fraud. Tbat thereafter, to wit : on January 9, 1878, tbe defendants Bell, C. H. and Wm. M. Baxter gave the defendant Hebberd, a bill of sale of their joint and several interest in said firm assets or in any surplus tbat might arise to them or either of them therefrom. Tbe said Bell then being insolvent. Tbe bill of sale was given and tbe property delivered to Hebberd on condition that be would settle with tbe creditors according to tbe compromise except with plaintiff and one other, who were included in the composition deed, and then turn over tbe surplus to Bell and William M. Baxter. Between tbe date of tbe general assignment and tbe bill of sale, C. H. Baxter transferred all bis interest in tbe assets to Bell, of which Hebberd had notice. Hebberd accepted tbe bill of sale and thereunder acquired and took possession of all tbe assets of Baxter, Bell & Co., and the individual surplus of each member of this firm therein after tbe payment of tbe creditors signing tbe composition deed, with tbe exception of this plaintiff and one other. He collected the accounts and disposed of tbe stock and received the proceeds thereof. Tbe assets thus acquired by Hebberd were of a value sufficient to satisfy tbe creditors of Baxter, Bell & Co., and leave a surplus of which Franklin Bell’s share would be more than enough to pay the plaintiff’s claim, and that said bill of sale was fraudulent as against plaintiff, and was made by Bell and received by Hebberd with intent to hinder, delay, and defraud plaintiff, and that Hebberd conspired with Bell to defraud plaintiff, and prevent the collection of his claim out of *856 tbe surplus of tbe assets of Baxter, Bell & Co., and to tbat end bas mingled moneys collected from tbe assets of Baxter, Bell & Co., with bis own, and suppressed his accounts.
Tbat on April 4th, 1878, plaintiff brought an action against Hebberd, Bell, C. H. Baxter and others to foreclose tbe mortgage made by Bell and Chas. H. Baxter to secure their bond on which there was due a balance of $15,000 with interest. On April 23, 1878, just 19 days after tbe commencement of this action, Wm. M. Baxter released to Hebberd bis interest in tbe said assets, and on tbe same day Hebberd made a bill of sale of tbe assets to Bell, which was a sham, and under which no property was delivered or intended to be delivered. In such action of foreclosure such proceedings were bad that a decree of foreclosure and sale was made therein and mortgaged premises sold and a judgment of deficiency entered for $15.477.62 on June 13, 1882, and on which execution was issued to the sheriff of the county of which tbe judgment debtors, Bell and C. H. Baxter were residents, and returned wholly unsatisfied. Then this ^action was brought to compel the satisfaction of this judgment out of the surplus of Bell and C. H. Baxter, in assets of Baxter, Bell & Co. in hands of Hebberd unaccounted for. After the commencement ofithis action, C. H. Baxter paid $5,000 on account of said judgment, and received a joint debtor’s release as , to himself, leaving due to plaintiff on such judgment of deficiency the sum of $12,510,-85 ; for which Hebberd is adjudged liable to plaintiff. This is an outline of the history of this case and the findings of the trial court.
The appellant insists that the judgment against Hebberd herein should be reversed for alleged errors of the trial court, which we will now consider.
There are two classes of errors complained of, viz. : that certain of the findings of fact are unsupported by the evidence ; and the admission of testimony against the objection of appellant Hebberd. In the consideration of the first class, it will be seen that counsel for appellant bases his argument in favor of error in this respect largely upon the theory that the trial judge has placed but little confidence in er given but slight weight to the testimony of appellant Hebberd. A casual examination of Ms. testimony discloses an absence of that frankness which characterizes an honest and truthful witness ; and exhibits contradictions so direct and numerous as to startle the most credulous with disbelief ; and well might the trial judge declare that no reliance could be placed on Ms statements when contradicted by other evidence.
First: Appellant contends that the court erred in finding that Hebberd became vested and held the assets of Baxter, Bell & Co. on January 9,1878, under the bill of sale of that date, because the bill of sale was delivered according to the testimony *857 of Hebberd in tbis trial on April 28, 1878, and tbe general assignment was made on Dec. 13, 1877, prior to tbe bill of sale. Hebberd testified on bis trial that tbe bill of sale was not delivered till April 28, 1878, though on tbe accounting proceedings in New York Common Pleas, he testified (when it was not necessary to fix tbe day of delivery on April 23rd, 1878, to sustain the theory of his defence herein) that the bill of sale was made to him on January 9th, 1878, and that he receivedthe assets and proceeded to manufacture the stock and advanced large sums of money in so doing ; and by good management and care, disposed of such stock to advantage and paid all creditors except plaintiff. The moneys derived from the collection of accounts and sale of goods went into his bank accounts, and the firm of Baxter & Bell, to whom he claims to have turned over the assets, did not for a long time after, even have a bank account. It is quite evident that after all the creditors signed the composition deed to accept 35 per cent, of their claims, when the assets were sufficient to pay them in full, that Bell, who ajtpears to have been the master spirit of Baxter, Bell & Co. in these transactions, and Hebberd concluded the assignment had accomplished their purpose and exhausted its function. Hebberd failed to qualify as assignee, he filed no' bond according to the statute,and had not up to that time really taken possession of the assets. Composition deed signed by all the creditors including this plaintiff, Hebberd and Bell conceived the idea, (and successfully executed the same unless defeated by this judgment) of vesting and transferring to Hebberd all the assets of Baxter, Bell & Co., and the individual interest of each partner in any surplus, with the intention of securing the entire surplus to Hebberd for his own and Bell’s benefit, free from the rights of C. H. Baxter to a share of such surplus and from the debt of plaintiff against Bell and C. H. Baxter, and subject only to the payment to the creditors, other than plaintiff, of the percentage called for by the composition deed. This intention is clearly deducible from the bill of sale, transfer of C. H. Baxter’s interest in such surplus to Bell, the release of Baxter’s interest (Wm. M.) to Hebberd, the large amounts realized from collection of accounts and sale of stock, the concealment of amounts of such collections and sales, the neglect to keep books of accounts of such transactions, or if such books were kept, a suppression thereof, the pretended claim of Hebberd to have loaned to Baxter & Bell large sums of money to settle with the compounding creditors, while it was shown that the creditors had been paid in most cases by the checks of Hebberd, and the amount of collections on account of the estate of Baxter, Bell & Co., was at all times largely in excess of his alleged advances ; the testimony before one tribunal that he manufactured the stock, and by good management and care disposed of it to ad *858 vantage and paid tbe creditors with tire proceeds therefrom, and then before another tribunal that he turned over the stock undiminished and untouched to Baxter, Bell & Co., or their suesessor, or rather in fact that he never had possession off the stock at all; and finally, Hebberd, a few days before plaintiff secured his first judgment for deficiency in the foreclosure action, openly claims possession and ownership of the rights of Bell and C. H. Baxter in the old business of Baxter, Bell & Co., under the firm name of Wm. M. Baxter & Co., of which he was the Co.
It is plain to us that the bill of sale of January 9,1878 was delivered on that day and that Hebberd became vested and took possession of a large surplus belonging to Bell under such bill of sale and has never accounted for the same. Bell’s share of the surplus was more than sufficient to pay the claim of plaintiff. There were three members of the firm of Baxter, Bell & Co., and it will be assumed, if the contrary is not shown, that they were equal partners, and it is undisputed that before the bill of sale of January 9, 1878, C. H. Baxter transferred his interest therein to Bell, of which Hebberd had notice, and thus Bell became entitled to two-thirds of such surplus, and the testimony of McDonald shows that Hebberd up to May 1,1878,
Collected on the accouutsand notes due Baxter, Bell & Co., about.$43,000
And according to the testimony of Owens, the value of the stock of Baxter, Bell & Co., was about . ... 50,000
$93,000
The amount paid the compounding creditors of Baxter, Bell & Co., in full settlement according to compromise was about 32,000
Leaving a surplus of.$61,000
of which Bell was entitled to two-thirds or about forty thousand dollars, for which sum Hebberd has failed to account.
There can be no doubt that the bill of sale of January 9, 1878, was the result of a conspiracy on the part of Bell and Hebberd with intent to cheat and defraud the plaintiff and prevent him collecting his claim out of the surplus belonging to Bell and C. H. Baxter, and such bill of sale was made with the intent to hinder, delay and defraud the plaintiff. It is hostile to every sense of justice that Hebberd should be allowed to retain this surplus belonging to Bell who is liable on the plaintiff’s judgment for deficiency and not account for the same and we are convinced that the findings of fact of the trial judge upon which this judgment rests, are fully and fairly sustained by the evidence.
The judgment roll in the action of foreclosure in which the deficiency judgment was entered and upon which this action was brought, was properly admitted to prove the debt of plaintiff and the exhaustion of his legal remedies. The receipt of 15,000 on account of said claim of plaintiff from the defendant *859 C. H. Baxter and on a release to him under tbe joint debtors act does not discharge the other joint debtors or those having-property belonging to the joint debtor not released. This was the object of the act allowing the release of a joint debtor and the right to contribution is reserved by the act. Code Civil Procedure, 1942, 1943 and 1944.
The statements of Bell at the meeting of the creditors of Baxter, Bell & Co., were properly admitted, for it was upon the falsity of these statements that plaintiff relied partly to set aside the composition deed which he signed. The testimony of Carpenter, the foreman book-keeper of Baxter, Bell & Co., was immaterial and could not have affected the result, though we are of the opinion he had a right to use the memoranda made-from the books to refresh his memory, and then the testimony was superseded by the introduction of the books in evidence-from which the memoranda was taken.
The other exceptions to the admission of testimony are not well taken, or the testimony brought out in no way injured the defendant Hebberd, or affected the result. The contention that there should have been an interlocutory judgment for an accounting is not well taken. For the parties went into the accounting without objection. Hebberd says he turned over ta Baxter & Bell in bulk, the assets of Baxter, Bell & Co., and he-had no inventory of the stock of assets, received and kept no accounts of same or books that would throw light on the assets-received or disposed of, and it would be an idle ceremony to order an accounting of assets that defendant Hebberd swears he never received or that he turned over to the successors of Baxter, Bell & Co., and of which he had no inventory.
For the foregoing reasons we think the judgment must be affirmed with costs.
REYNOLDS, J., concurs.